IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| DEE ANN CARGILL, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | 2:12-CV-183 |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**
**TO REVERSE DECISION OF THE COMMISSIONER**
**AND TO REMAND THE CASE**

Plaintiff DEE ANN CARGILL brings this cause of action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration (Commissioner), denying plaintiff's application for disability insurance benefits. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case REMANDED for action consistent with this Report and Recommendation.

I.
BACKGROUND

Plaintiff applied for disability insurance benefits in April of 2009. (Transcript [hereinafter Tr.] 115). In her application, plaintiff, who was unrepresented at the time, alleged she had been unable to work since September 30, 2004, due to "Aadd [sic]; allergies; slow; carpal tunnel on right hand; arthritis." (*Id.* 145). Plaintiff detailed the impact of these ailments on her ability to work: "my

back gives out on me a lot [sic]. I am having trouble with my knees and feet. My right hean [sic] I have carpal tunnel. I am having trouble getting up." (*Id.*). The Social Security Administration, finding plaintiff suffers from the primary problem of borderline intellectual functioning and the secondary problem of carpal tunnel syndrom denied benefits initially and upon reconsideration. (*Id.* 56, 57).

Upon plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on September 1, 2010. (*Id.* 30). Plaintiff was represented by an attorney at the hearing. (*Id.*). At Step One of his determination, the ALJ held plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.* 18). At Step Two, the ALJ found plaintiff suffers from the severe impairments of borderline intellectual functioning and obesity. (*Id.*). At Step Three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* 19). At Step Four, the ALJ found plaintiff had the residual functional capacity (RFC) to "perform light work as defined in 20 CFR 404.1567(b) except is limited to work that requires only simple job tasks and occasional public contact." (*Id.* 21). This RFC determination precluded plaintiff from returning to her past relevant work. (*Id.* 23). Accordingly, at Step Five of his analysis, the ALJ concluded "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* 24). The ALJ's determination was upheld on appeal. (*Id.* 1). This lawsuit, based on 42 U.S.C. § 405(g), followed.

II.
## ISSUE PRESENTED

In a single ground of error, plaintiff contends reversal of the Commissioner's determination is warranted because "[t]he ALJ committed legal error at step three of the sequential evaluation process in finding that plaintiff does not meet the requirements of Listing 12.05C." ("Plaintiff's Brief in Support of Claim," doc. 15, pg. 3 (filed Dec. 26, 2012)).

III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). In this case, plaintiff does not challenge the existence of substantial evidence in the record supporting the determination but rather contends the ALJ erred in the application of the controlling law to his factual determinations regarding plaintiff.

"Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Where the resulting disability determination remains unchanged, even if some of the reasoning underlying that decision is erroneous, no substantial rights have been affected. *See id.* "The procedural improprieties alleged by [a plaintiff] will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

## IV.
## MERITS

Plaintiff contends the ALJ erred in concluding, at Step Three of the five-step sequential evaluation process, that she did not meet the requirements of Listing 12.05C. The Commissioner has responded the ALJ's determination was correct because plaintiff met only one of the three requirements of that listing.

### A. *Requirements of Listing 12.05C*

Under the Social Security Regulations, if, at Step Three of the five-step sequential analysis, the Commissioner determines the claimant has an impairment that meets one of a list of medical conditions, commonly referred to as the listings, and is expected to or has suffered from the condition for a certain amount of time, that person is considered disabled for purposes of obtaining social security benefits. 20 C.F.R. § 416.920(a)(4)(iii); Pt. 404, App. 1. Listing 12 contains a list of recognized mental disorders; within that section, listing 12.05 details the requirements of meeting the criteria for mental retardation. That listing establishes:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, App. 1, 12.05C.

This listing is generally broken down into one threshold requirement (found in the introductory paragraph) that the impairment's onset date occurred before the claimant turned twenty-two years old and two primary requirements, one concerning the claimant's IQ and the other concerning the existence of an additional impairment. *See Randall v. Astrue*, 570 F.3d 651, 659 (5th Cir. 2009).

*B. The ALJ's Findings*

At the ALJ hearing, plaintiff's attorney indicated plaintiff had received benefits for mental retardation as a child and those benefits were terminated upon plaintiff's marriage to her husband, whose income was above the threshold amount to continue receiving benefits. (Tr. 34, 35). Counsel's argument was supported by the testimony of plaintiff's mother, who stated plaintiff received SSI benefits as a child after a psychiatrist diagnosed her with mental retardation. (*Id.* 46). Counsel also summarized plaintiff's school records, which although not containing a specific IQ score, did reflect plaintiff was in special education classes and was four levels below her grade level. (*Id.* 34). Counsel continued that in addition to plaintiff's borderline intellectual functioning, plaintiff was "morbidly obese, she's 5'2" and weighs 302 pounds." (*Id.* 35). Plaintiff confirmed these measurements during her testimony. (*Id.* 36). Based on these considerations, counsel contended that plaintiff met the requirements of listing 12.05C.[1] (*Id.*).

---

[1] The Commissioner in her brief to the Court avers, "[p]laintiff did not even allege obesity as a basis for her disability claim." ("Defendant's Brief," doc. 16, pg. 5 (filed Jan. 25, 2013)). While it is true that plaintiff, a person who is diagnosed with borderline intellectual functioning, and who filled out the initial disability application without any assistance (Tr. 48), did not list obesity as an impairment, she did, in her paperwork to the Commissioner, complain of difficulty walking and getting up and pain in her back, knees, and feet. (*Id.* 145, 194). Moreover, once she obtained an attorney, that attorney contended in oral argument and in a post-hearing letter to the ALJ that plaintiff's obesity was an impairment. (*Id.* 35, 224-25). Plaintiff's attorney again presented that argument to the Appeals Council. (*Id.* 226-27). In addition, the medical evidence of record reflects plaintiff was diagnosed by a treating physician with obesity on more than one occasion and was recommended for dietary counseling. (*Id.* 236, 238). In an examination conducted by a state agency doctor for the purpose of disability determination, the examining doctor noted plaintiff was not capable of bending over due to her habitus. (*Id.* 297). Plaintiff herself

The pertinent findings made by the ALJ are those made at Steps Two and Three of the five-step analysis. At Step Two of the analysis, the ALJ must consider the "medical severity" of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is considered "severe" at this step if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant is found to suffer from a severe impairment, the factfinder must proceed to Step Three, where he or she determines whether the claimant's severe impairment meets the definition of one of the ailments detailed in the listings.

As indicated above, at Step Two in his analysis, the ALJ found:

> The claimant has the following severe impairments: borderline intellectual functioning, obesity [sic] (20 CFR 404.1520(c)).
>
> The claimant's impairments are severe (20 CFR 416.924(c)), as said impairments cause more than minimal functional limitations in performing basic work activities.

(Tr. 19). At Step Three of his decision, the ALJ noted the results of plaintiff's IQ test: a full scale IQ of 64, a verbal IQ of 66, and a performance IQ of 68. (*Id.* 20; *see id.* 312). The ALJ then held,

> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the claimant is obese in addition to borderline intellectual functioning, the objective medical evidence fails to support that she is significantly limited in her ability to physically, perform [sic] work-related functions. The undersigned classified obesity as a severe impairment only to the extent that this impairment would cause more than minimal, not significant, limitations in the claimant's ability to perform basic work activities.

(*Id.* 20-21). The ALJ did not discuss whether plaintiff's borderline intellectual functioning arose before or after plaintiff turned twenty-two. (*See id.*).

---

testified before the ALJ that she is 5'2" tall and weighs 302 pounds. (*Id.* 36). This would give her a body mass index (BMI) of 55.2, which is well over the BMI of 40 that the Commissioner considers "extreme" obesity, i.e. "representing the greatest risk for developing obesity-related impairments." Social Security Ruling 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859, 57860 (Sept. 12, 2002).

*C. Does Plaintiff Meet the Requirements of Listing 12.05C*

Plaintiff contends the record before the ALJ proved she met all the requirements of listing 12.05C, and the ALJ erred in holding otherwise. In response, the Commissioner concedes plaintiff satisfied the IQ requirement of the listing but contends she did not satisfy either the onset date requirement or the "significant additional impairment" requirement of the listing.

1. Onset Before Age Twenty-Two

The threshold question of listing 12.05 is whether the claimant's subaverage intellectual functioning manifested before age twenty-two. 20 C.F.R. Pt. 404, App. 1, 12.05; *Randall*, 570 F.3d at 659. As indicated, plaintiff provided evidence her borderline intellectual functioning was present before she turned twenty-two. Specifically, Dr. Addison Gradel, a psychologist who personally evaluated plaintiff, indicated in her report to the Commissioner that plaintiff's psychological limitations manifested when plaintiff was in the first grade. (Tr. 316). Dr. Gradel's conclusions were supported by plaintiff's testimony that she was in special education classes throughout school (*Id.* 38-39); plaintiff's school records (*Id.* 319-24); and plaintiff's mother's testimony that plaintiff received social security benefits as a child based upon a psychiatrist's diagnoses of plaintiff as mentally retarded (*Id.* 45-46). There is no evidence in the record to contradict the testimony that plaintiff received SSI benefits as a child or Dr. Gradel's conclusion that the onset date of plaintiff's mental limitations was before plaintiff turned twenty-two.

The ALJ did not discuss this issue in his decision. Rather, as indicated in the above-quoted portion of the ALJ's decision, the ALJ based his finding plaintiff did not meet the requirements of Listing 12.05C on the absence of an additional significant impairment. (*Id.* 20-21). Apart from his discussion of Listing 12.05C, the ALJ did not otherwise make any specific holding regarding the

onset date of plaintiff's mental limitations. Since the ALJ did not rely on the onset date as a factor *disqualifying* plaintiff, the ALJ's decision is fairly read that he considered the plaintiff's onset date was before age twenty-two and that such complied with the listing requirement. Thus, absent some comment or explanation from the ALJ that the ALJ found plaintiff *did not* suffer from mental retardation prior to age twenty-two, and since there is no conflicting evidence, the Court finds plaintiff met her burden of demonstrating that she meets the threshold requirement of Listing 12.05C, i.e., the onset date of her borderline intellectual functioning occurred before she turned twenty-two. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

### 2. Additional Significant Impairment

The second requirement of meeting Listing 12.05C is the claimant must suffer from "an additional and significant work-related limitation of function." The question in this case is whether the ALJ utilized the proper standard when holding plaintiff's obesity did not qualify as a "significant" limitation, even though at Step Two he found her obesity was a "severe" limitation.

The introductory paragraph applicable to all of the sections under Listing 12, which is Listing 12.00A, offers some guidance as to what the phrase "additional and significant work-related limitation of function" found in Listing 12.05C means:

> For paragraph [12.05]C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. § 416.920(a)(4)(iii); Pt. 404, Subpt P, App. 1, § 12.00A. In discussing the addition of this introductory explanation as it relates to Listing 12.05C, the Commissioner issued the following

statement:

> [T]he phrase "significant work-related limitation of function" might not be clear. We always have intended the phrase to mean that the other impairment is a "severe" impairment, as defined in §§ 404.1520(c) and 416.920(c) . . . [W]e will assess the degree of functional limitation the additional impairment imposes to determine if it significantly limits an individual's physical or mental ability to do basic work activities; "i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."

Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772-73 (Aug. 21, 2000).

The Fifth Circuit has never explicitly denied, adopted, or acknowledged that the Commissioner's use of "significant" in Listing 12.05C is equivalent to its use of "severe" in 20 C.F.R. § 404.1520(c).[2] *See Henderson v. Astrue*, No. 4:007-CV-093, 2008 WL 269450 at *7 (N.D. Tex. Jan. 30, 2008). Other circuit courts and courts in this district, however, have so held (before the Commissioner released the 12.00 addition or the August 2000 comment to that addition). *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (holding the determination of whether a limitation is "significant" should "closely parallel" the Step Two determination of whether a limitation is "severe"); *Cook v. Bowen*, 797 F.2d 687, 691 (8th Cir. 1986); *Nieves v. Sec. of Health & Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985) (holding "[b]ecause claimant's impairment was found to be severe [at Step Two], *a fortiori* it satisfies the significant limitations standard" of Listing 12.05C); *Edwards v. Heckler*, 736 F.2d 625, 630 (11th Cir. 1984) (holding an analysis of whether the claimant meets the second prong of Listing 12.05C is, in effect, a determination of the existence of a severe impairment); *Estelle v. Sec. of Health & Human Servs*, 752 F.Supp. 110, 115 (W.D. La.

---

[2] Section 404.1520(c) discusses the Commissioner's determination at Step Two of the five-step analysis. At that step, the factfinder must determine whether the claimant's impairment is severe. Section 404.1520(c) defines a "severe" impairment as one that "significantly limits your physical or mental ability to do basic work activities."

1989); *see also Parker v. Astrue*, No. 11-294-SCR, 2012 WL 5384821, at *4 n. 11 (M.D. La. Nov. 1, 2012); *Bailey v. Astrue*, No. 3:10-CV-1187, 2011 WL 4048394, at *4 (N.D. Tex. Sept. 12, 2011) (stating "the 'additional impairment' need not be physical or *per se* disabling in order to satisfy Listing 12.05C. All that is required is proof of a 'severe' impairment as defined at Step 2").

The Commissioner has also released a ruling specifically speaking to cases where the claimant potentially falling under Listing 12.05C has the additional impairment of obesity: "when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is 'severe' . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function." Social Security Ruling 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859, 57862 (Sept. 12, 2002).

In this case, the ALJ indicated at Step Two of his analysis that he would determine which of plaintiff's impairments were severe. (Tr. 17). The ALJ said, in line with 20 C.F.R. § 404.1520(c), "[a]n impairment . . . is 'severe' within the meaning of the regulations if it *significantly limits* an individual's ability to perform basic work activities. An impairment . . . is 'not severe' when . . . evidence establish[es] only a slight abnormality . . . that would have *no more than a minimal* effect on an individual's ability to work." (*Id.* (emphasis added)). The ALJ then found, at Step Two of his decision, plaintiff's obesity is severe, again specifically referencing 20 C.F.R. § 404.1520(c). (*Id.* 18). In his Step Three analysis, however, when determining whether plaintiff qualified for benefits under a listing, the ALJ appears to retreat from his earlier finding, explaining he "classified obesity as a severe impairment only to the extent that this impairment would cause *more than minimal*, *not significant*, limitations . . ." (*Id.* 21 (emphasis added)).

Clearly, the view the ALJ took of plaintiff's obesity at Step Two, which was that it was a

severe impairment significantly limiting plaintiff, is inconsistent with his view of plaintiff's obesity impairment at Step Three, which was that the impairment did not significantly limit her. Either plaintiff's obesity is a severe impairment, significantly limiting her, or it is not. Both findings cannot stand.

If in fact the ALJ's Step Two determination, where he classified plaintiff's obesity as severe, is correct, then it appears plaintiff qualified for benefits under Listing 12.05C. *See* 20 C.F.R. § 416.920(a)(4)(iii); Pt. 404, Subpt P, App. 1, § 12.00A; 65 Fed. Reg. at 50772-73; SSR 02-1p, 67 Fed. Reg. at 57862. As detailed in footnote 1, plaintiff's BMI places her in the Social Security Administration's top category for obesity. Based upon this and upon the other evidence in the record, it appears to the Court as though plaintiff's obesity significantly limits her to the degree required by Listing 12.05C. Consequently, plaintiff suffered prejudice from the ALJ's error, as her substantial rights were affected by the ALJ's erroneous reasoning. *See Mays*, 837 F.2d at 1364. Stated differently, the errors made by the ALJ and the resulting conflict in his determinations cast doubt as to whether substantial evidence supports the ALJ's decision. *See Morris*, 864 F.2d at 335.

Even though it appears plaintiff met the listing, remand is appropriate. The ALJ made conflicting findings, appearing to be saying his Step Two determination did not constitute a finding of a significant limitation. The defendant should address this conflict and determine if plaintiff met the listing or explain why plaintiff's obesity is not severe. The defendant Commissioner should make that determination in the first instance, not the Court. Given the conflicting holdings by the defendant on whether the impairment is severe, the Court must remand the case to the Commissioner for a final determination on the issue.

V.
RECOMMENDATION

For all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff DEE ANN CARGILL not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for administrative action consistent with this Report and Recommendation.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 10th day of September, 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely

file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).